UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER BURDGE, | Case No. 1:15-cv-00124-ELJ-CWD |
| Plaintiff, | **REPORT AND RECOMMENDATION RE: MOTION TO DISMISS (DKT. 4)** |
| v. | **AND** |
| BOB KUSTRA, ANN HUBBERT, ALICIA ESTEY, TIM DUNNAGAN, and RON PFEIFFER, | **ORDER RE: MOTION TO STRIKE (DKT. 11) AND MOTION FOR PROTECTIVE ORDER (DKT. 23)** |
| Defendants. | |

## INTRODUCTION

Pending before the Court are three motions filed by Defendants: Motion to Dismiss (Dkt. 4); Motion to Strike Plaintiff's sur-response to Defendants' reply in support of their motion to dismiss. (Dkt. 11); and, Motion for Protective Order, to preclude Defendants' responses to Burdge's outstanding discovery requests until the Court rules on the motion to dismiss (Dkt. 23).

In the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the pending motions will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1 (d).

**REPORT RECOMMENDATION AND ORDER - 1**

For the reasons which follow, the Court issues the following report and recommendation on the Motion to Dismiss and orders on the Motion to Strike and Motion for Protective Order.

**1. Factual Background[1]**

At the beginning of the Fall 2014 semester, Boise State University advertised the School of Nursing would provide a free meningitis vaccine clinic to its students and faculty on August 22 and 26 and on September 9 and 24. *See* Compl. Ex A. (Dkt. 1-1 at 3.)  The specific meningitis vaccine available was MCV4, and was provided to BSU through a grant from the United States Centers for Disease Control and Prevention. It is undisputed MCV4 is labeled and CDC-approved for ages two through fifty-five. The CDC did not provide BSU with a meningitis vaccine for individuals over the age of fifty-five.

Plaintiff Christopher Burdge is a student at BSU. Though Burdge does not specify his actual age in his complaint, he indicates he is at least sixty years of age.[2] On August 22, 2014, Burdge attended the meningitis vaccine clinic. He completed a medical evaluation form; attached to the form was a brochure on the MCV4 vaccine. The MCV4 vaccine brochure states the range for the vaccine is age two through fifty-five.  Despite the age limit, Burdge assumed there was either an "on the spot waiver by the supervisor

---

[1] For the purposes of Defendant's Motion to Dismiss, this background section accepts as true the allegations raised in Burdge's Complaint and the uncontroverted allegations in the affidavits filed with the instant motion. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The Court considers any disputed material facts in the light most favorable to Burdge. *Id.*

[2] "I am almost 61…" Compl. Ex. C. (Dkt. 1-3.)

**REPORT RECOMMENDATION AND ORDER - 2**

nurse on request from Plaintiff or that there would be the alternative and older version of the vaccine which covered all ages." Compl., p. 12 (Dkt. 1 at 12.).

Upon review of Burdge's medical evaluation form, Burdge was deemed ineligible to receive the vaccine because he was over the age of fifty-five.  The supervising nurse explained to Burdge he would need to see his primary care provider to receive the vaccine. Burdge spoke to Defendants, various officials at BSU, regarding his ineligibility for the free meningitis vaccine.

Defendants offered Burdge alternative options to receive a meningitis vaccine. First, Defendant Ann Hubbert, Director of the Nursing College, told Burdge he could receive the MCV4 vaccine at the BSU free clinic if he obtained a note from his physician, indicating he was "at risk to acquire meningitis," and recommending he receive the vaccine on an "off label prescribed" basis. Compl. at Ex. D. (Dkt. 1-4 at 1.) Burdge declined this offer.[3]

Next, Alicia Estey, Executive Director of Institutional Compliance, told Burdge he could visit BSU's Director of Medical Services, Vincent Serio, M.D., to determine if Burdge was at risk for contracting meningitis. If he was, Dr. Serio would administer the vaccination to Burdge, at no cost. She recommended alternatively Burdge could contact St. Luke's Travel Medicine department to determine if he was a suitable candidate for Menomune (MPVS4), a meningococcal vaccine licensed for the use for individuals over the age of fifty-five. If he was a candidate for the vaccine, she informed Burdge BSU

---

[3] Defendants Tim Dunnagan and Ron Pheiffer (Dean and Associate Dean of the College of Health Sciences) agreed with Hubbert, Burdge would need physician approval if he wanted to obtain the MCV4 vaccine at the BSU free clinic. Compl., Ex. F. (Dkt. 1-5 at 1.)

**REPORT RECOMMENDATION AND ORDER - 3**

would cover the costs associated with administration of the vaccine. Burdge considered

Estey's offers as "bribes" and declined them both.

On September 8, 2014, Burdge sent a "Final Notice" email to Bob Kustra,

BSU President, informing him of his intention to seek legal action if the MCV4

vaccine was not made available to him by the following day, September 9, 2014,

at the vaccine clinic.[4] Burdge attended the September 9, 2014 vaccine clinic, but

the Nursing College declined to administer the MCV4 vaccine to him because

Burdge was over the age of fifty-five. On September 16, Burdge reiterated to BSU

Dean of Students, Christian Wuthrich, his demand to receive the vaccine, this time

by September 26, 2014 (the last day of the vaccine clinic). Again, and for the same

reason as before, the Nursing College did not administer the vaccine to Burdge.[5]

## 2. Procedural Background

Burdge has acknowledged that, before he could bring an action pursuant to the

Age Discrimination Act  42 U.S.C. §  6101 in this Court against BSU, the Act required

him to submit an administrative complaint to the United States Department of Education,

Office of Civil Rights (OCR) for permission to sue.[6] Burdge filed an administrative

complaint with the OCR alleging that BSU violated the Age Discrimination Act by

---

[4] In addition, Burdge demanded there be a formal correction to BSU's policy on age discrimination specific to the Meningitis vaccine, and also that Kustra issue a complete, thorough, and humble apology to Burdge.

[5] Other than "humiliation," Burdge does not indicate whether he was at risk for, or contracted, meningitis. *See* Response to Motion to Dismiss (Dkt. 7 at 11) (Burdge indicates Defendants' actions "humiliated" him and caused not only "mental harm but personal loss of relationships of those at BSU who did not fully understand the depths of deprivation inflicted on the Plaintiff").

[6] "I realized that by law under the Age Discrimination Act of 1975 regarding universities that accept Federal money I am required to first file a complaint with the Federal Office of Civil Rights (OCR)…" Compl., Ex. Q. (Dkt. 1-11 at 9.)

**REPORT RECOMMENDATION AND ORDER - 4**

denying his access to the meningitis vaccine because of his age. On April 7, 2015, the

OCR gave Burdge permission to proceed against BSU with the allegations made in his

complaint for injunctive relief.  Burdge declined the opportunity. On April 8, 2015,

Burdge emailed  OCR as follows:

> In my belief the best injunction is to burn the individuals financially and
> career wise at the stake as an example for others who will take their
> positions. I may still [pursue] an injunctive relief action under the Age
> Discrimination Act of 1975 but right now my focus is the 1983 suit to go
> after those involved…. With BSU left off the suit leaves me the option of
> going after it at a later date….

Compl. (Dkt. 1 at 28.)

On April 13, 2015, Burdge filed his Complaint against the Defendants individually

named in this action. However, Burdge is less than clear about his allegation(s) against

Defendants. Specifically, the complaint states: "[t]his case is filed under 42 U.S.C.

§ 1983 et seq. (Federal Law) for violation of Plaintiffs[sic] rights under the Age

Discrimination Act of 1975- Title 42 U.S.C.  6101 et seq. (Federal Law) as protected by

the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the

United States Constitution."[7] Compl. (Dkt. 1 at 2.) Burdge is suing each defendant in his

or her individual capacity for monetary relief.

On May 6, 2015, Defendants filed a motion to dismiss the entirety of Burdge's

complaint. (Dkt. 4.) Defendants interpret the complaint as alleging one cause of action—

a violation of the Age Discrimination Act brought under 42 U.S.C. §1983—and

developed their motion to dismiss around that one cause of action.  Specifically, as

---

[7] Burdge restates variations of this phrase, including reference to "violation of the Age Discrimination Act of 1975," at least fourteen times throughout his complaint.

**REPORT RECOMMENDATION AND ORDER - 5**

Defendants move to dismiss on the grounds the Court lacks subject matter jurisdiction because, Defendants argue, there is no private right of action for monetary damages under the Age Discrimination Act and because Burdge failed to comply with the notice requirements of the Act before suing the individual Defendants. They move also for dismissal on the ground Burdge's claim fails to state a plausible claim for relief. Alternatively, Defendants raise the defense of qualified immunity.

In his response, Burdge attempts to clarify the claims alleged in his complaint. He argues: "Plaintiff **DID NOT** file under 42 U.S.C. § 6101 (against BSU the "*institution*") for injunction or legal fees and instead filed under § 1983 for violation of Due Process and Equal Protection solely against the 5 individual Defendants in their Individual Capacity." Resp. (Dkt. 7 at 2) (emphasis in original). Specifically, he argues the Defendants violated his Fourteenth Amendment Due Process and Equal Protection rights by violating the Age Discrimination Act and Boise State University Policy Rule 1060. *Id.* (Dkt. 7 at 7.)[8] He contends his age discrimination claim can proceed under Section 1983 because the Age Discrimination Act is not the exclusive remedy for age discrimination.

In their reply, Defendants maintain the complaint alleges only one plausible cause of action for a violation of the Age Discrimination Act, and argue also Burdge's age discrimination claim cannot be brought under Section 1983 because the Age Discrimination Act is the exclusive remedy for age discrimination in education. Further, without waiving their argument that the complaint contains only one cause of action, Defendants contend for the purpose of their motion to dismiss, that if Burdge's complaint

---

[8] According to Boise State University Policy 1060, age is considered a "protected class."

**REPORT RECOMMENDATION AND ORDER - 6**

contains equal protection and due process causes of action, those claims are subject to dismissal for failure to state a claim.

Burdge filed a Response to Defendants Reply to Plaintiffs Response to Defendants Motion to Dismiss (Dkt. 10) where he argued further his position that the Age Discrimination Act is not the exclusive remedy for the type of age discrimination he alleges. Defendants filed a motion to strike this second response/sur-response to the motion to dismiss. (Dkt. 11.) Before analyzing the motion to dismiss, the Court will first take up the related motion to strike.

## MOTION TO STRIKE (Dkt. 11)

Defendants ask the Court to strike Burdge's Response to Defendants Reply to Plaintiffs Response to Defendants Motion to Dismiss (Dkt. 10) on the ground that the response, which is more appropriately characterized as a sur-response, was improperly filed without leave of the Court. Burdge argues there is no rule which restricts additional filings to a motion beyond the reply.

Generally, "under the Local Rules, a responding party is not entitled to 'respond' or 'reply' to a reply of the moving party," without advance leave from the Court. *Purkey v. Rubino*, No. CV 04-0548-E-MHW, 2006 WL 3497267, at *8 (D. Idaho Dec. 4, 2006); Dist. Idaho L. Rule 7.1 (b) and (c).  The motion to dismiss was ripe for the Court's review on June 22, 2015; Burdge did not request leave of the Court to file a sur-response.

Burdge improperly filed his sur-response. However, having reviewed the arguments in the sur-response and in Burdge's response to the motion to strike (Dkt. 12), the Court finds that, even when considered and if a sur-reply had been required by

**REPORT RECOMMENDATION AND ORDER - 7**

Defendants, neither would alter the below analysis of the motion to dismiss.[9]

Accordingly, the Court will deny the motion to strike as moot.

## REPORT

## MOTION TO DISMISS (Dkt. 5)

### 1.  Legal Standards

#### A. Motion to Dismiss

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations,… it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotations omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotations marks omitted).

#### B. Leave to Amend

If the Court determines the complaint or any of its claims should be dismissed, it then must decide whether to grant leave to amend. Federal Rule of Civil Procedure 15(a) states leave to amend "shall be freely given when justice so requires." "When dismissing

---

[9] Further, motions to strike are more properly reserved for pleadings pursuant to Fed. R. Civ. P. 12(f). Burdge's sur-response is not a pleading. *See* Fed. R. Civ. P. 7.

a complaint for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1286 (N.D. Cal. 2014) (quoting *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (internal quotation makes omitted)). Nonetheless, "[a] district court ... may ... deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir.2009) (internal quotation and alteration omitted).

### C. 42 U.S.C. § 1983

Section 1983, the civil rights statute, merely "provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by the Constitution and laws' of the United States" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). "[O]ne cannot go into court and claim a 'violation of § 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617 (1979). Rather, to state a valid claim under § 1983, a plaintiff must allege that a person acting under color of state law violated his rights protected by the Constitution or created by federal statute. *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir.1991).

### D. Age Discrimination Act

42 U.S.C. § 6102 states as follows:

[N]o person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance.

## 3. Discussion

With regard to Burdge's allegations, because documents filed by *pro se* litigants are to be liberally construed, the Court interprets Burdge's complaint as alleging violations of Section 1983 by virtue of violations of: (1) the Age Discrimination Act, (2) the Due Process Clause of the Fourteenth Amendment; and (3) the Equal Protection Clause of the Fourteenth Amendment. *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) ("A document filed *pro se* is to be liberally construed" (internal quotation marks omitted)). For the reasons set forth below, the Court will recommend Defendants' motion to dismiss all claims in Budge's complaint be granted.

### A. Age Discrimination Act Claim

Burdge alleges Defendants violated the Age Discrimination Act because they: (1) failed to administer, at the BSU free vaccine clinic, the MCV4 meningitis vaccine to him because he was over the age of fifty-five, and (2) failed to have available a meningitis vaccine approved for ages fifty-five and older. He brings his claim under Section 1983 against all Defendants in their individual capacities, arguing the Age Discrimination Act is not an exclusive remedy for his cause of action. He contends he is permitted to file his Age Discrimination Act claim pursuant to Section 1983, which in turn, allows him to

**REPORT RECOMMENDATION AND ORDER - 10**

bypass the remedial scheme and relief limitations prescribed by the Act. Defendants disagree, and argue the Act's comprehensive remedial scheme forecloses Burdge from pursuing his age discrimination claim under Section 1983.

"An alleged violation of federal law may not be vindicated under Section 1983 where 'Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme.'" *Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1292 (N.D. Cal. 2014) (quoting *Vinson v. Thomas,* 288 F.3d 1145, 1155 (9th Cir.2002) (citations omitted)). "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex Co. Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, (1981)). When Congress creates specific statutory remedies with respect to an act, "[i]t is hard to believe that Congress intended to preserve the § 1983 right of action." *Id.* Therefore, "the existence of these express remedies demonstrates not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983." *Id.* at 21, 101 S.Ct. 2615.

"The provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 121, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005). "To preclude enforcement under section 1983, the Act's remedial scheme must be so comprehensive as to leave no room for additional private remedies." *Buckley v. City of Redding,* 66 F.3d 188, 193 (9th Cir.1995).

REPORT RECOMMENDATION AND ORDER - 11

The United States Court of Appeals for the Ninth Circuit has yet to address whether the Age Discrimination Act's remedial scheme is sufficiently comprehensive to preclude Section 1983 claims. However, the United States District Court for the District of Northern California has addressed the issue and has concluded the Act does preclude Section 1983 claims alleging discrimination by a program or activity receiving federal financial assistance in violation of the Fourteenth Amendment. *Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1284 (N.D. Cal. 2014).

In reaching its conclusion, the court in *Albee* compared the Age Discrimination Act's remedial scheme to the Age Discrimination in Employment Act's remedial scheme. Specifically, the court considered the Ninth Circuit's analysis in *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1060 (9th Cir. 2009), where the Ninth Circuit determined the Age Discrimination in Employment Act's remedial scheme precludes Section 1983 actions. *Id.* (citing *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1060 (9th Cir. 2009)). [10] Integral to its analysis and decision, the *Ahlmeyer* court stated: "'courts must analyze the comprehensiveness of a statute' and the statute's 'corresponding preclusion of other remedies' to determine whether the statute should be

---

[10] Burdge cites a Seventh Circuit case for the proposition that the ADEA does not preclude a Section 1983 claim for enforcement of constitutional rights. *Levin v. Madigan*, 692 F.3d 607 (7th Cir. 2012). The United States Supreme Court granted certiorari in *Levin*, but later dismissed the writ of certiorari as "improvidently granted." *Madigan v. Levin*, 134 S. Ct. 2 (2013) (per curiam). Burdge interprets the Supreme Court's dismissal as an affirmation of the Seventh Circuit's decision, and concludes the law in *Levin* is the "law of the land." Burdge's argument is misplaced. "Improvidently granted" means the Supreme Court granted certiorari "without adequate consideration;" dismissal does not mean the Supreme Court approved the Seventh Circuit's interpretation of the ADEA vis a vis Section 1983. *Improvidently*, *Black Law's Dictionary* (6th ed. 1991). This Court applies Ninth Circuit authority and is under no obligation to apply the law from another circuit. Because *Ahlmeyer* is current, on point, Ninth Circuit authority, the Court declines to consider the Seventh Circuit's decision in *Levin*.

**REPORT RECOMMENDATION AND ORDER - 12**

read as precluding Section 1983 actions." *Albee*, 42 F. Supp. 3d at 1293 (quoting

*Ahlmeyer*, 555 F.3d at 1060).

The *Albee* court applied the standard in *Ahlmeyer* and found the Age

Discrimination Act's remedial scheme comprehensive:

> Under Section 6102, "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. §§ 6102. Funding agencies have the authority to promulgate regulations to carry out the provisions of Section 6102 and to provide "appropriate investigative, conciliation, and enforcement procedures." 42 U.S.C. §§ 6103(a)(1)(4). The agency can "seek to achieve compliance" with its regulations "by terminating, or refusing to grant or to continue, assistance under the program or activity." 42 U.S.C. § 6104(a)(1).
>
> In addition to agency oversight and enforcement, the ADA also provides beneficiaries with an administrative remedy and judicial remedy. Beneficiaries who believe a recipient is violating Section 6102 can file an administrative complaint with the relevant agency. 42 U.S.C. § 6104(f). If, after 180 days, the agency either takes no action or finds in favor of the recipient, the beneficiary can seek to "enjoin a violation of [the ADA] by any program or activity receiving Federal financial assistance." 42 U.S.C. § 6104(e)(1), (f). Notably, the Section 6104(c) private cause of action allows a court to enjoin a violation of Section 6102.

The Court here finds the *Albee* decision persuasive and consistent with the Ninth

Circuit's decisions in *Okwu v. McKim,* 682 F.3d 841, 844–46 (9th Cir.2012) and *Vinson*

*v. Thomas*, 288 F.3d 1145 (9th Cir. 2002), concluding that the remedial schemes of Titles

I and II of the Americans with Disabilities Act are sufficiently comprehensive to

foreclose Section 1983 claims based on disability discrimination.

The enforcement mechanism for rights created by the Age Discrimination Act is

available through the Act itself. Burdge was aware of this enforcement mechanism and

**REPORT RECOMMENDATION AND ORDER - 13**

began to pursue relief consistent with the Act when he filed his adminsitrative complaint with the OCR against BSU. Allowing Burdge to bring a Section 1983 claim based on an alleged violation of the Age Discrimination Act against the Defendants in their individual capacity for monetary damages would enlarge the relief available for violations of the Act.[11] *See Steshenko v. Albee*, 42 F. Supp. 3d 1281, 1290 (N.D. Cal. 2014) ("The Age Discrimination Act does not authorize the recovery of monetary damages as to individual defendants."); *See also Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). While Burdge may not agree with the type of relief proscribed by the Act or from whom he is permitted to seek it, the Act nonetheless provides a remedy for the discrimination he alleges he incurred.

Accordingly, the Court will recommend that Burdge's Section 1983 claims of age discrimination against individual employees of BSU, an educational program receiving federal financial assistance, be dismissed for failure to state a claim upon which relief can be granted.

### B. Fourteenth Amendment Claims

Burdge attempts also to bring his age discrimination claims as violations of both his Equal Protection and Due Process rights under the Fourteenth Amendment pursuant to Section 1983. Burdge alleges he was treated differently from other students when he was not provided with a meningitis vaccination at the free vaccine clinic. And, citing only

---

[11] In this regard, the undersigned recommends the Court exercise judicial restraint by not recognizing a private enforcement action against the individual employees of BSU given the Age Discrimination Act does not expressly provide for that type of relief.

**REPORT RECOMMENDATION AND ORDER - 14**

the Age Discrimination Act and BSU's policy against discrimination, Burdge contends he had a right to receive the MCV4 vaccination for free, like the other BSU Students.

For the reasons explained above, the Courts finds the Age Discrimination Act is the exclusive remedy for claims of a student, here Burdge, alleging age discrimination by an educational program or activity receiving federal financial assistance. *See Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 957 (N.D. Cal. 2014) (The Age Discrimination Act forecloses § 1983 claims alleging age discrimination in violation of the Fourteenth Amendment by a program or activity receiving federal financial assistance.).

Accordingly, the Court will recommend Burdge's Section 1983 claims alleging violations of the Fourteenth Amendment be dismissed for failure to state a claim. Because the above analysis disposes of the entirety of Burdge's claims, the Court need not reach Defendants alternative arguments for dismissal.

## MOTION FOR PROTECTIVE ORDER (DKT. 23)

On August 18, 2015, Defendants filed a Motion for Protective Order (Dkt. 23) requesting the Court to preclude Defendants from responding to Burdge's discovery requests, which include 105 interrogatories,[12] until after the Court issues its decision on the motion to dismiss.[13] Burdge propounded these discovery requests on Defendants after they filed their motion to dismiss. Defendants argue there is good cause for a protective order because such an order would prevent increased litigation expenses. Specifically,

---

[12] Defendants did not stipulate, nor did Burdge receive permission from the Court to submit interrogatories in excess of the limitation provided by Fed. R. Civ. P. 33(a)(1). ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories…").

[13] The Motion to Dismiss was fully briefed and ripe of the Court's review on June 1, 2015.

**REPORT RECOMMENDATION AND ORDER - 15**

Defendants note that the motion to dismiss attacks the complaint in its entirety, and, if granted, could obviate discovery in this case. Defendants contend the protective order will not prejudice Burdge because the parties have until June 30, 2016 to complete factual discovery in this case.[14]

Federal Rule of Civil Procedure Rule 26(c) permits the Court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The United States Supreme Court has recognized this language confers 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *Flsmidth Spokane, Inc. v. Emerson*, 2014 WL 979187, at *1 (D. Idaho Mar. 12, 2014) (citing *Seattle Times Co. Rhinehart*, 467 U.S. 20, 36 (1984).

In consideration of the pending motion to dismiss and the factual discovery deadline which is over six months away, the Court finds good cause to grant the protective order. Accordingly, discovery in this action by both parties is stayed to allow the Court to determine whether to adopt or modify the report and recommendation on Defendants' motion to dismiss.

## CONCLUSION

The Court will recommend Defendants' Motion to Dismiss be granted. In addition, the Court will deny Defendant's Motion to Strike as moot and grant Defendants' Motion for Protective Order.

---

[14] Burdge timely filed a "response" to the motion for protective order. However, he does not respond to the merits of the motion. Rather, he uses his response to attack Defendants' attorney personally. The Court has previously warned the parties of such behavior, and does not condone it here.

**REPORT RECOMMENDATION AND ORDER - 16**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

    1) Motion to Strike (Dkt. 11) is **DENIED as MOOT;** and

    2) Motion for Protective Order (Dkt. 23) is **GRANTED**.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

    1) Motion to Dismiss (Dkt. 4) be **GRANTED** with prejudice.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **December 30, 2015**

Honorable Candy W. Dale
United States Magistrate Judge